# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **CHARLES STUCKEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | Civil Action Number |
| | ) | **5:21-cv-01717-AKK** |
| **BROOKDALE EMPLOYEE** | ) | |
| **SERVICES, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Charles Stuckey sues Brookdale Employee Services, LLC, for alleged violations of the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* Doc. 1. Stuckey contends that Brookdale denied his entitlement to paternity leave and retaliated against him by investigating and discharging him upon his return to work. *See id.* at 7–10. Brookdale moves to compel arbitration and either to stay or to dismiss the case under Federal Rule of Civil Procedure 12(b)(1). Doc. 6. After thorough consideration, the court will grant the motion to compel and dismiss the case in light of the arbitration agreement.

## I.

Under the Federal Arbitration Act, "no party can be compelled to arbitrate unless that party has entered into an agreement to do so." *Employers Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001); *see* 9 U.S.C.

§ 1 *et seq.*  To determine whether the parties agreed to arbitrate a dispute, the court considers: "(1) whether there is a valid agreement to arbitrate; and (2) whether the dispute in question falls within the scope of that agreement." *Scurtu v. Int'l Student Exch.*, 523 F. Supp. 2d 1313, 1318 (S.D. Ala. 2007).  "To resolve these questions, courts apply state-law principles relating to ordinary contract formation and interpretation, construed through the lens of the federal policy favoring arbitration." *Id.*  Thus, "[f]ederal law establishes the enforceability of arbitration agreements, while state law governs [their] interpretation and formation," and doubts "should be resolved in favor of arbitration." *Employers Ins. of Wausau*, 251 F.3d at 1322.

In addition, courts may treat motions to compel arbitration as motions to dismiss under Federal Rule of Civil Procedure 12(b)(1).  *Baptist Hosp. of Miami, Inc. v. Medica Healthcare Plans, Inc.*, 376 F. Supp. 3d 1298, 1304 (S.D. Fla. 2019) (citing FED. R. CIV. P. 12(b)(1)).  In other words, in lieu of staying a case, a court may dismiss it when all of the issues raised must proceed to arbitration.  *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992); *Caley v. Gulfstream Aerospace Corp.*, 333 F. Supp. 2d 1367, 1379 (N.D. Ga. 2004) (granting motions to compel arbitration and to dismiss the case), *aff'd*, 428 F.3d 1359, 1379 (11th Cir. 2005) ("[T]he district court properly granted [the] defendants' motions to dismiss and to compel arbitration.").

2

## II.[1]

In 2016, Brookdale promoted Stuckey to "Director of Financial Services/Human Resources" of Brookdale Jones Farm.  Doc. 1 at 3.  *See also* doc. 15 at 5–6 (Stuckey's offer letter).  Brookdale offered Stuckey a base salary of $1,615.38 biweekly, classified him as an overtime-exempt employee, and allowed him to enroll in its medical, dental, vision, and disability insurance programs.  Docs. 1 at 3; 15 at 5.  Stuckey's offer letter stated that his employment "[would] be considered 'at will'" and that he "[would] be offered a binding arbitration agreement."  Doc. 15 at 6.  The offer letter further stated that if Stuckey "chose not to sign that agreement and beg[a]n working, [he] [would] still be bound by the binding arbitration agreement, as binding arbitration [was] a condition of employment with Brookdale."  *Id.*  Stuckey signed the offer letter next to the word "ACCEPTED."  *See id.*

---

[1] The court considers certain attachments to the briefing to recount the allegations and the parties' arguments.  *See, e.g.*, docs. 6-1; 15; 18-1.  Generally, when the court considers materials outside the complaint, it must convert a motion to dismiss into one for summary judgment.  *Day v. Taylor*, 400 F.3d 1272, 1275–76 (11th Cir. 2005).  However, the court may consider attachments without converting the motion if the attachments are "(1) central to the plaintiff's claim and (2) undisputed."  *Id.* at 1276.  Whether Stuckey must submit his claims to arbitration necessarily implicates the terms of his employment with Brookdale.  *See* doc. 15 at 5–6; *id.* at 8–10; *id.* at 21–22.  Further, whether Brookdale produced the arbitration agreement to Stuckey's counsel as he requested and whether Brookdale timely responded to his complaint—two issues Stuckey raises—involve communications that both parties include with their briefing.  Thus, the court may consider these materials without converting the motion.

During his employment with Brookdale, Stuckey received an Associate Handbook, *see id.* at 8, 15, that stated that Brookdale "instituted a mandatory binding arbitration procedure for all associates," *id.* at 10. It also stated that "[b]inding arbitration [was] a condition of employment at Brookdale" and that Stuckey "[would] be required to sign a separate Binding Arbitration Agreement in order to remain employed at Brookdale." *Id.* "By accepting Brookdale's offer of employment or accepting continued employment," the Handbook read, "[the associate] and Brookdale [were] agreeing to the terms of the [Binding Arbitration] Procedure." *Id.* Covered claims included "violations of the Family and Medical Leave Act (FMLA)." *Id.* Stuckey signed an "Associate Handbook Receipt and Acknowledgement." *Id.* at 15.

Brookdale's "Dispute Resolution Agreement" required "any legal dispute arising out of or related to [an associate's] employment . . . [to] be resolved using final and binding arbitration and not by a court or jury trial." *Id.* at 21 (emphasis omitted). Legal disputes included "any claims that c[a]me about through the . . . Family and Medical Leave Act." *Id.* The associate "[would] pay for [their] attorney," and Brookdale "[would] pay for its attorney" and for "the Arbitrator and arbitration fees." *Id.* at 22. The agreement provided that "even if [the associate] [did] not sign this Agreement, if [they] c[a]me to work after being given this

Agreement, [they] [were] agreeing to it and so [was] Brookdale." *Id.*  The parties do not supply a signed copy of this agreement.

During the workday on May 16, 2021, Stuckey's wife, who was pregnant with twins, went into labor.  Doc. 1 at 4.  The following day, Stuckey informed Allen Jones, Jones Farm's executive director, that he and his wife "[would] not be in for work." *Id.*  Stuckey spoke "about [his] children's birth" with Jones and Lori Fisher, the assisted living administrator, and "worked from the [h]ospital by phone and email between May 17, 2021, and May 19, 2021." *Id.*  Over the next several days, the hospital discharged Stuckey's daughter and wife, and Stuckey worked from home. *Id.* at 4–5.  On May 24, Stuckey returned to Jones Farm, and the hospital discharged his son several days later. *Id.* at 5.

Jones then informed Stuckey that "he was the subject of an investigation." *Id.* "During a Zoom video conference call, Stuckey was questioned about Brookdale associates who were related" and "was also asked if he had taken 'Paid Time Off' for his time away from work." *Id.*  Stuckey asked Jones if he "needed to put in [a] PTO request," to which Jones replied that "it was not required because Stuckey was working remotely all week." *Id.*  Later in June, however, Zachary Jacobsen, the director of district operations; Alma Cole, the area nurse manager; and Fisher "informed Stuckey he was terminated," allegedly for "falsification of his timecard." *Id.*

Stuckey claims that he "was eligible to leave" under the FMLA and to request PTO when his wife went into labor and that Brookdale "was on notice" that his leave "was for the birth of his son and daughter." *Id.* at 7. He also contends that Brookdale "was on notice" that Stuckey was not "on worksite" for approximately one week for the same reason and to care for his spouse and children. *Id.* He asserts that he notified Brookdale of his need to take leave "as soon as was reasonably possible" and that Brookdale nonetheless "did not designate days between May 16, 2021, and May 24, 2021, as FMLA-qualifying leave." *Id.* Stuckey filed this lawsuit alleging interference with his leave and retaliation under the FMLA. *Id.* at 7, 9.

### III.

Brookdale moves to compel Stuckey to arbitrate his claims under the Dispute Resolution Agreement. Doc. 6. For his part, Stuckey argues that "[Brookdale] invokes an improper mechanism to compel arbitration," doc. 18 at 4; "disputes the existence of an agreement to arbitrate," *id.* at 7; and contends that he did not assent to the arbitration process, that the Dispute Resolution Agreement is unconscionable, and that Brookdale waived its right to compel arbitration, *id.* at 9–13.

### A.

Stuckey first claims that "numerous courts have found that [Rule 12(b)(1) motions] are an improper procedural mechanism for enforcement of an arbitration clause." *Id.* at 5. However, the cases Stuckey cites to support this assertion come

from outside of the Eleventh Circuit.  *See id.*  In this Circuit, courts may "treat[] a motion to compel arbitration as a Rule 12(b)(1) motion to dismiss for lack of subject matter consideration."  *Baptist Hosp. of Miami, Inc.*, 376 F. Supp. 3d at 1304.  Thus, Brookdale did not employ a novel or unauthorized mechanism to invoke arbitration in response to Stuckey's lawsuit.

Moreover, Stuckey's contention overlooks that Brookdale moves to compel arbitration and either to dismiss the case under Rule 12(b)(1) or to stay the case pending the resolution of arbitration.  *See generally* doc. 5.  In either case, the court must look to the FAA and to Alabama law to determine whether "an enforceable contract or agreement to arbitrate exists," because the FAA provides that "a contract containing an arbitration agreement 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'"  *Griggs v. Kenworth of Montgomery, Inc.*, 775 F. App'x 608, 611–12 (11th Cir. 2019) (citing *Caley*, 428 F.3d at 1368).  Thus, Brookdale properly raises the issue of arbitrability, which may warrant a stay or dismissal under the Dispute Resolution Agreement notwithstanding Brookdale's invocation of Rule 12(b)(1).

## B.

Stuckey also contests "the existence of an agreement to arbitrate" in accordance with the Dispute Resolution Agreement or Binding Arbitration Procedure.  Doc. 18 at 7.  In support, Stuckey offers that "[u]pon information and

belief there are other versions of Brookdale's DRA and BAP between 2017 and 2021" and that any subsequent version "would revoke and replace any agreement to arbitrate in accordance with the terms of Brookdale's 2016 DRA and BAP." *Id.* However, Stuckey does not allege any facts about a superseding agreement, such as by claiming that Brookdale provided or Stuckey signed a later arbitration agreement that carved out FMLA claims. This conclusory contention fails to establish that the 2016 Dispute Resolution Agreement in effect when he received the offer letter is not the operative arbitration agreement.[2]

C.

Stuckey next argues that he did not assent to arbitration, as evidenced by (1) Brookdale's failure to provide a signed copy of the Dispute Resolution Agreement and (2) the "conflicting details" between the Binding Arbitration Procedure and the Dispute Resolution Agreement. Doc. 18 at 8–10. While the FAA establishes the enforceability of arbitration agreements, the court must look to state law to determine their formation and meaning. *Employers Ins. of Wausau*, 251 F.3d

---

[2] Stuckey claims that "[l]ike other employers when updating mandatory dispute resolution agreements, Brookdale includes language to the effect that 'this agreement supersedes and replaces any other agreements between us regarding the resolution of legal disputes.'" Doc. 18 at 7. *See also* doc. 15 at 22 (using this language). But Stuckey does not contend that Brookdale gave him an updated arbitration agreement that altered the arbitration process, nor does he claim that he signed a more recent document to that effect. While this matter arises on Brookdale's motion to compel and to dismiss, and Stuckey does not have the benefit of discovery, Stuckey must do more than essentially allege that Brookdale *could* have updated the Dispute Resolution Agreement. Presumably, if Stuckey indeed received a superseding agreement that made clear his claims in this lawsuit are not covered by arbitration, he would (and should) have stated as much.

at 1322.  Thus, the court turns to Alabama law to address the absence of the signature and the "conflicting details" between the BAP and the DRA.

1.

In Alabama, "[t]he purpose of a signature on a contract is to show mutual assent," but "the existence of a contract may also be inferred from other external and objective manifestations of mutual assent." *Ex parte Rush*, 730 So. 2d 1175, 1177–78 (Ala. 1999).  With respect to arbitration agreements, the Supreme Court of Alabama has explained:

> Unless a contract is required by a statute to be signed (the FAA contains no such requirement), or by the Statute of Frauds to be in writing . . . , or unless the parties agree that a contract is not binding until it is signed by both of them . . . , it need not be signed by the party against whom enforcement is sought, provided it is accepted and acted upon.

*Id.* at 1178.  Thus, where neither law nor the parties' agreement requires signatures to render the contract enforceable, "[c]onduct of one party from which the other may reasonably draw the inference of assent to an agreement is effective as acceptance" under Alabama law.  *Id.*

The relevant arbitration agreement—the 2016 Dispute Resolution Agreement—explicitly provides:

> By signing this, I am saying that I have received, read, understand and agree to all the terms contained in this Agreement. I understand that *even if I do not sign this Agreement, if I come to work after being given this Agreement, I am agreeing to it and so is Brookdale*. I understand and agree that consenting to this Agreement is a condition of employment with Brookdale.

9

Doc. 15 at 22 (emphasis added).  Although Stuckey states that "there is evidence that the parties agreed that the contract to arbitrate needed to be signed by both parties," doc. 18 at 8, the contract itself undermines this contention.  Again, the court acknowledges that this issue arises before the opportunity for discovery, and so Stuckey cannot provide—nor can the court expect—specific evidence to rebut Brookdale's contentions.  Simultaneously, however, Stuckey does not plead any facts about the circumstances of his alleged failure to sign or to receive the agreement, including conversations or actions that would suggest he and Brookdale "agree[d] that [the] contract [was] not binding until it [was] signed by both of them."[3]  *See Ex parte Rush*, 730 So. 2d at 1178.

Taken together, Stuckey received and signed an offer letter and acknowledgement form explicitly recognizing that he would (1) receive the Dispute Resolution Agreement and (2) assent to its terms by virtue of continuing to report to work, regardless of whether he signed it.  *See* doc. 15 at 5–6, 15.  These documents, and most importantly, the Dispute Resolution Agreement itself, indicated that FMLA claims would proceed to arbitration rather than a court proceeding.  *See* doc.

---

[3] Merely stating that Stuckey did not sign the agreement and that "[t]here is no evidence [he] was given the agreement," doc. 18 at 8, particularly where his human-resources role involved onboarding associates and "all Brookdale associates must agree to be bound by Brookdale's mandatory employment arbitration program," *see* doc. 15 at 2, is not enough.  This is especially so where the "strong federal preference for arbitration of disputes expressed by Congress in the [FAA] must be enforced where possible," *Musnick v. King Motor Co. of Fort Lauderdale*, 325 F.3d 1255, 1258 (11th Cir. 2003), and where doubts should be resolved "in favor of arbitration." *See Scurtu*, 523 F. Supp. 2d at 1318.

15 at 21–22.  Stuckey subsequently assumed his new role and held it until his discharge in 2021.  *See* doc. 1 at 3–4.  On these facts, and under state law, Stuckey assented to the 2016 Dispute Resolution Agreement even if he did not sign it, and this argument as to mutual assent unfortunately fails.

2.

Stuckey also argues that "Brookdale's DRA and BAP are inconsistent in [the] essential terms of [the] arbitration process," further dooming mutual assent.  Doc. 18 at 9.  According to Stuckey, the Dispute Resolution Agreement and the Binding Arbitration Procedure "have two totally different 'Arbitrator Fee Provisions,'" with the BAP listing that the parties would split the arbitrator's fees and expenses and the DRA providing that Brookdale would pay the arbitrator and arbitration fees.  *Id.* at 10; *compare* doc. 15 at 12 *with* doc. 15 at 22.

A valid contract requires "mutual assent to terms essential to the formation of a contract," *Hunter v. Wilshire Credit Corp.*, 927 So. 2d 810, 813 (Ala. 2005), and Stuckey claims that "there was no meeting of the minds with respect to arbitration" because the fee provisions differed, doc. 18 at 10.  But the BAP was not the agreement to arbitrate.  Rather, it was a provision of the Associate Handbook that provided information about the arbitration process.  *See* doc. 15 at 8–12.  If anything, the BAP was less "employee-friendly" than the DRA—the actual agreement—which clearly provided that Brookdale "[would] pay the Arbitrator and arbitration

11

fees." *Id.* at 22. The court is therefore unconvinced that there is more than one arbitration agreement at issue and that the differing terms undermined Stuckey's assent to arbitration.[4]

In addition, the case that Stuckey cites from outside this Circuit to support his argument is inapposite. *See* doc. 18 at 10 (citing *Ragab v. Howard*, 841 F.3d 1134, 1138 (10th Cir. 2016)). In *Ragab*, the Tenth Circuit held that conflicting arbitration provisions across six agreements indicated there was no meeting of the minds and no enforceable arbitration agreement. *See* 841 F.3d at 1137–38. The Tenth Circuit noted that "[t]he inconsistencies across the six arbitration provisions . . . almost mirror[ed] the irreconcilable portions of the arbitration provisions in [a previous case], including the governing rules, the day by which the parties had to initiate arbitration, and which party was responsible for the arbitration fees." *Id.* at 1138. Moreover, "there [was] no language in the six agreements that suggest[ed] one contract [overrode] the others, and [the court] [could not] arbitrarily pick one to enforce because doing so could [have] violate[d] the other five." *Id.* Under Colorado law requiring the parties to agree "upon all essential terms," the Tenth Circuit thus declined to compel arbitration. *Id.*

---

[4] Stuckey attaches to his opposition brief emails between his counsel and Brookdale's counsel in which Stuckey's counsel requests "the other versions of the arbitration agreement," if any. *See* doc. 18-13 at 1. Brookdale's counsel responds: "The DRA is the agreement. That's the 2016 version. Are you asking for the provisions in the employee handbook? I don't think those have changed." *Id.* Stuckey does not plead facts supporting the existence of superseding agreements.

In this case, by contrast, there is one Dispute Resolution Agreement and not several arbitration provisions across a variety of contracts. *See* doc. 15 at 21–22. In fact, the DRA provides that "[it] is the whole agreement between Brookdale and [Stuckey] relating to resolving legal disputes between [them]." *Id.* at 22.[5] Additionally, Stuckey's offer letter accurately characterized the terms of the DRA, and the BAP mirrors this, save for the discrepancy about the arbitration fees. *See id.* at 5–6, 10–12, 21–22. And even when confronted with multiple, conflicting arbitration agreements—which is not the case here—the Supreme Court of Alabama has compelled arbitration where only one agreement is integrated. *See Ex parte Palm Harbor Homes, Inc.*, 798 So. 2d 656, 660–61 (Ala. 2001) (considering three signed instruments with arbitration provisions and enforcing the provision in the agreement with a merger clause). Stuckey's claim about the potential conflicts between these documents is therefore unavailing.

## D.

Stuckey next contends that the Dispute Resolution Agreement is procedurally and substantively unconscionable. Doc. 18 at 10–12. Arbitration agreements "may be held unenforceable . . . if, under the controlling state law of contracts, requiring arbitration of a dispute would be unconscionable." *Cappuccitti v. DirecTV, Inc.*, 623

---

[5] *See also* doc. 15 at 22 ("This Agreement supersedes and replaces any other agreements between [Brookdale and Stuckey] regarding the resolution of legal disputes.").

F.3d 1118, 1123–24 (11th Cir. 2010); *see Dale v. Comcast Corp.*, 498 F.3d 1216, 1219 (11th Cir. 2007) ("[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements.").

To establish unconscionability, Alabama courts require

> both procedural unconscionability (*i.e.*, that the imposed-upon party lacked meaningful choice about whether and how to enter into the transaction) and substantive unconscionability (*i.e.*, that the contract terms are unreasonably favorable to the more powerful party by, for example, altering in an impermissible manner fundamental duties otherwise imposed by law or negating reasonable expectations of the nondrafting party).

*Scurtu*, 523 F. Supp. 2d at 1323; *see SCI Ala. Funeral Servs., LLC v. Hinton*, 260 So. 3d 34, 39, 41 (Ala. 2018); *Blue Cross Blue Shield of Ala. v. Rigas*, 923 So. 2d 1077, 1086–87 (Ala. 2005). The court addresses these forms of unconscionability and Stuckey's corresponding contentions in turn.

### 1.

Procedural unconscionability refers to "procedural deficiencies in the contract formation process, such as deception or a refusal to bargain over contract terms, today often analyzed in terms of whether the imposed-upon party had meaningful choice about whether and how to enter into the transaction." *Hinton*, 260 So. 3d at 39; *Rigas*, 923 So. 2d at 1087. Put simply, procedural unconscionability means that one party had "overwhelming bargaining power." *See Hinton*, 260 So. 3d at 39. On this front, Stuckey argues that he "lacked a meaningful choice in signing the

arbitration agreement" and that "[Brookdale] exercised overwhelming bargaining power."  Doc. 18 at 11.  Because the DRA made Stuckey's employment contingent upon agreeing to the arbitration process, Stuckey contends that the agreement was an unenforceable "contract of adhesion."  *See id.* at 12.

The court recognizes the import of Stuckey's argument: By conditioning his employment on accepting the DRA, Brookdale essentially left Stuckey without a meaningful choice about whether to agree to arbitrate, rather than litigate, a swath of possible legal claims.  Certainly, Stuckey could have declined the role.  But pragmatic concerns about staying employed and limited knowledge about the potential drawbacks of arbitration could have justifiably won out.  Indeed, mandatory arbitration agreements like the one at issue often force workers to decide whether to waive their rights to sue with little information or foresight about the arbitration process, hindering their ability to make informed choices.[6]  In short, you

---

[6] *See* Katherine V.W. Stone & Alexander J.S. Colvin, *The arbitration epidemic: Mandatory arbitration deprives workers and consumers of their rights*, ECON. POL'Y INST. (Dec. 7, 2015), https://www.epi.org/publication/the-arbitration-epidemic (last visited Apr. 15, 2022) ("At the time of contracting, most consumers and employees do not object to having an arbitration clause in their contracts. After all, who thinks they will have a dispute with their employer or their bank? Who would risk a valuable job opportunity or an important consumer financial transaction over an obscure procedural provision? And if a dispute should arise, who wants to go to court to resolve a dispute over a faulty product or nonpayment of overtime pay? . . . . Yet despite the seeming benefits of arbitration, there are serious pitfalls.").  *See also* What Are Coercive Contracts?, PEOPLE'S PARITY PROJECT, https://www.peoplesparity.org/coercivecontracts (last visited Apr. 15, 2022) ("Forced arbitration clauses require workers and consumers, in order to keep their job or make a purchase, to waive their right to sue a company for any reason—even if they don't know they're giving up this right when they apply for a job, buy a phone, or even download an app.").

may have little incentive or power to do anything but agree when up against the interests and resources of a corporate employer that can assuredly replace you.

However, Alabama law makes clear that arguing only that "an arbitration agreement is a contract of adhesion," without more, fails to establish unconscionability. *See Johnnie's Homes, Inc. v. Holt*, 790 So. 2d 956, 964 (Ala. 2001); *Ex parte Parker*, 730 So. 2d 168, 171 (Ala. 1999). In other words, "[m]ere inequality in bargaining power . . . is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991). And Alabama courts assume that an individual who accepts an arbitration agreement in exchange for a good or service "has weighed the costs of not having the good or service and has found those costs to outweigh the value to him, at that time, of the perceived benefit of a future jury trial in the occurrence of a future dispute." *See Serv. Corp. Int'l v. Fulmer*, 883 So. 2d 621, 633 n.15 (Ala. 2003). Therefore, without specific allegations about the procedural defects in the contract formation process, Alabama law essentially presumes that Stuckey made a meaningful decision to arbitrate his claims in exchange for employment. *See id.*; *Hinton*, 260 So. 3d 39. Taken collectively, Stuckey's allegations fail to demonstrate procedural unconscionability.

2.

Substantive unconscionability relates directly to the terms of the contract "and whether those terms are unreasonably favorable to the more powerful party," such as by impairing the bargaining process or contravening public policy. *Rigas*, 923 So. 2d at 1086.  Stuckey takes aim at the provision of the Binding Arbitration Procedure that provides that "[t]he parties agree to share equally the AAA administrative fees and the arbitrator's fees and expenses, except as may be otherwise provided by statute, rule, regulation, decision of a court of competent jurisdiction, or decision of the arbitrator." *See* docs. 15 at 12; 18 at 11.  Stuckey contends that this provision makes arbitration "prohibitively expensive."  Doc. 18 at 11.  He also notes that the BAP requires the burden of proof at arbitration "[to] at all times be on the party seeking relief," and that though a plaintiff "typically bears the burden of proof, that is not always the case."  *Id.* at 12.  These provisions of the BAP, he says, render the DRA substantively unconscionable.  *See id.* at 11–12.  Again, unfortunately, Stuckey's arguments do not hold.

To be sure, an arbitration provision may not impose excessive costs such that it prevents a party from "entering the arbitral forum."  *See Leeman v. Cook's Pest Control, Inc.*, 902 So. 2d 641, 649 (Ala. 2004) (citing *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79 (2000); *Leonard v. Terminix Int'l Co.*, 854 So. 2d 529 (Ala. 2002)).  However, the DRA does not require the employee to share the fees and

17

expenses equally with Brookdale; rather, the DRA states that the employee "pay[s] for [their] attorney" while Brookside "pay[s] for its attorney" and "the Arbitrator and arbitration fees." Doc. 15 at 22. As explained, the DRA is the only arbitration agreement, and the discrepancy in the BAP does not render the actual contract unenforceable. *See supra* § III.C.2. And, importantly, that Stuckey must pay for his own lawyer while Brookdale pays for its lawyer and the arbitration costs does not "unreasonably favor[]" Brookdale. *See Rigas*, 923 So. 2d at 1086.

The burden-of-proof provision with which Stuckey takes issue also comes from the BAP, not the DRA. *Compare* doc. 15 at 11 *with* doc. 15 at 21–22. The DRA does not mention the burden of proof at arbitration. *See* doc. 15 at 21–22. Instead, the DRA provides that "motions, witnesses and evidence will be handled like any case or as directed by the Arbitrator. . . . [and] [a]ny disputes about how the case proceeds will be resolved by the Arbitrator." *Id.* at 21. Against this backdrop, the court cannot conclude that the DRA contains such "one-sided" provisions as to render it substantively unconscionable.

### E.

Finally, Stuckey argues that Brookdale waived its right to compel arbitration by failing to produce the "other versions of arbitration agreements between 2016 and 2021" and to timely respond to the complaint. Doc. 18 at 12–13. According to Stuckey, Brookdale improperly "invoked the [c]ourt's machinery to compel

arbitration," "further implicated judicial procedures" by moving to dismiss Stuckey's claims, and did so too late to validly compel arbitration.  *See id.*

"[A]n agreement to arbitrate, 'just like any other contract . . . , may be waived.'"  *Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1315 (11th Cir. 2002). A party waives its arbitration right if the party (1) "has acted inconsistently with the arbitration right," such as by "substantially participat[ing] in litigation to a point inconsistent with an intent to arbitrate," and (2) has prejudiced the other party by doing so.  *Id.  See also Interested Underwriters at Lloyd's v. M/T San Sebastian*, 508 F. Supp. 2d 1243, 1251 (N.D. Ga. 2007); *Anderton v. Practice-Monroeville, P.C.*, 164 So. 3d 1094, 1099 (Ala. 2014).   Here, however, Brookdale has not acted inconsistently with its right to compel arbitration.

First, Brookdale's motion to dismiss is not incompatible with compelling arbitration.  *See Baptist Hosp. of Miami, Inc.*, 376 F. Supp. 3d at 1304; *supra* § III.A. To state the obvious, to avoid default, Brookdale had to respond in some form to Stuckey's complaint.  That response came as a request to compel arbitration while dismissing or staying the federal-court proceedings, *see* doc. 6, and Brookdale has not participated so substantially in the litigation as to forego its arbitration right, *see Ivax Corp.*, 286 F.3d at 1315.

Stuckey also argues that "[i]f [Brookdale] wanted to proceed in [an] arbitral forum then it would have produced [its] DRA and BAP agreements in response to

[Stuckey's] written request," *id.* at 12, but Brookdale did produce the 2016 DRA, "the one [Stuckey] agreed to be bound by in his offer letter." *See* doc. 18-10 at 1.[7] And, as the court has observed, Stuckey does not plead facts suggesting that he received or signed other versions of the Dispute Resolution Agreement, particularly one that would have removed his FMLA claims from the scope of mandatory arbitration. Thus, the court cannot conclude that Brookdale waived its arbitration right by providing Stuckey only with the 2016 DRA.

Last, Stuckey points out that Brookdale did not file its motion until three days after the deadline to respond to the complaint. Doc. 18 at 13; *see* doc. 5 ("Brookdale . . . served on 2/8/2022, answer due 3/1/2022."); doc. 6 (responding on March 4, 2022). However, Stuckey did not ask the clerk to enter default before Brookdale filed the motion, and the court[8] subsequently ordered Stuckey to respond within 14 days and Brookdale to reply seven days after. Doc. 9. Considering these facts and that Brookdale filed its motion only three days late, the court cannot conclude that Brookdale acted inconsistently with its arbitration right or prejudiced

---

[7] Specifically, Stuckey's counsel first asked Brookdale's counsel if there were "different arbitration agreements" and, if so, "what version" was attached to Brookdale's draft motion. Doc. 18-10 at 1. Brookdale's counsel replied that the one attached to Brookdale's motion "[was] the 2016 version and the one [Stuckey] agreed to be bound by in his offer letter" and that counsel "[could] check on the other versions." *Id.* Later, Stuckey's counsel notified Brookdale's counsel that he "[had] not received the other versions of the arbitration agreement," to which Brookdale's counsel responded: "The DRA is the agreement. That's the 2016 version. Are you asking for the provisions in the employee handbook? I don't think those have changed." Doc. 18-13 at 1.

[8] The case was reassigned to the undersigned after these proceedings on March 14, 2022. Doc. 10.

Stuckey in doing so.  Indeed, counsel for both parties had communicated about jointly moving to stay the case to arbitrate the claims before Brookdale filed its motion—an idea that seems to have derailed due to a disagreement over the operative arbitration agreement.  *See* doc. 18 at 13 n.4.  While Brookdale should have requested an extension before untimely filing its motion, these actions did not prejudice Stuckey to the extent that Brookdale waived its arbitration right.

## IV.

In summary, the court will grant Brookdale's motion to compel arbitration because the parties agreed to arbitrate the FMLA claims that form the basis of Stuckey's lawsuit.  In addition, the court will dismiss the case without prejudice rather than issue a stay.[9]  A separate order follows.

**DONE** the 19th day of April, 2022.

_____

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

---

[9] *See Caley*, 333 F. Supp. 2d at 1379 (compelling arbitration and dismissing the case because "[t]he weight of the authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration") (emphasis in original).  *See also Bercovitch v. Baldwin Sch., Inc.*, 133 F.3d 141, 156 n.21 (1st Cir. 1998) ("[A] court may dismiss, rather than stay, a case when all of the issues before the court are arbitrable."); *L.E.A. Dynatech, Inc. v. Allina*, 49 F.3d 1527, 1530 (Fed. Cir. 1995) ("[D]ismissal without prejudice may operate as an alternative to a stay of proceedings.").